# SEALED

**Office of the United States Attorney**
District of Nevada
333 Las Vegas Blvd., South, Ste. 5000
Las Vegas, Nevada 89101
(702) 388-6336

F[...]

2009 JAN 22  PM 4:34

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL COMPLAINT |
| Plaintiff, ) | |
| ) | Case No: 2:09-mj-30-GWF |
| VS. ) | |
| ) | VIOLATIONS: |
| ) | |
| RODOLFO RODRIGUEZ CABRERA, ) | 17 U.S.C. §§ 1201(a)(1)(A) & 1204(a)- Circumvention of Copyright Protection Systems |
| Defendant. ) | |
| ) | 17 U.S.C. § 506(a)(1)(A) & 18 U.S.C. § 2319(b)(1) - Criminal Copyright Infringement |
| | 18 U.S.C. § 2320 - Trafficking in Counterfeit Goods |

**BEFORE** the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant being first duly sworn, deposes and says:

### COUNT ONE

From on or about December of 2007 through July of 2008, in the District of Nevada and elsewhere, the defendant,

**RODOLFO RODRIGUEZ CABRERA,**

did willfully, and for purposes of commercial advantage and private financial gain, circumvent a technological measure that effectively controls access to a work protected under Title 17 of the United States Code, namely, a copyrighted work, described as International Gaming Technology, Inc. software, in violation of Title 17, United States Code, Sections 1201(a)(1)(A) and 1204(a).

## COUNT TWO

From on or about December of 2007 through July of 2008, in the District of Nevada and elsewhere, the defendant,

**RODOLFO RODRIGUEZ CABRERA,**

did willfully, for the purpose of private financial gain, infringe the copyright of a copyrighted work, to wit, International Gaming Technology, Inc. software, by reproducing and distributing during a 180-day period at least ten infringing copies of one or more copyrighted works with a total retail value of more than $2,500, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1).

## COUNT THREE

From on or about December of 2007 through July of 2008, in the District of Nevada and elsewhere, the defendant,

**RODOLFO RODRIGUEZ CABRERA,**

did intentionally traffic in goods, specifically twenty-five (25) International Gaming Technology, Inc. 044 boards, while knowingly using on and in connection with such goods counterfeit marks, to wit, spurious marks identical to and substantially indistinguishable from the International Gaming Technology, Inc.'s "IGT" trademarked logo, marks that were in use and registered for those goods on the principal register of the United States Patent and Trademark Office, the use of which counterfeit marks were likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Section 2320(a).

## PROBABLE CAUSE AFFIDAVIT

I, Nicholas E. Bugni, Complainant, as for probable cause, state the following:

1. The Complainant is a Special Agent with the Federal Bureau of Investigation ("FBI"), currently assigned to the Las Vegas, Nevada Field Office, and has been so employed for

approximately 2 years.

2. The Complainant has had formal training and has experience in the investigation of white collar criminal investigations, to include investigating crimes involving criminal copyright infringement, trafficking in counterfeit goods or services and internet fraud.

3. This complaint is based on information obtained from my own personal investigation as well as information and documents provided to me by other people such as law enforcement personnel, the victim company, and a confidential source.

4. Since December of 2007, the FBI has been conducting an investigation into RODOLFO RODRIGUEZ CABRERA ("CABRERA") of FE Electronics located at Kvueles 15-17 STR, Riga, Latvia and HENRY MANTILLA ("MANTILLA") of Southeast Gaming, Inc., located in Cape Coral, Florida, concerning the illegal sale of copyright protected software owned by International Game Technology, Inc. ("IGT"). IGT is headquartered in Reno, Nevada and is engaged in the business of designing, manufacturing and distributing video gaming machines, including the copyright protected software contained in the gaming machines.

5. On December 5, 2007, a Confidential Source ("Source") was introduced to MANTILLA to discuss the buying and selling of gaming machine components such as button panels, cabinets, and IGT software. MANTILLA told Source that he had software for several IGT game themes for sale and Source said he/she would be interested in possibly buying some IGT games.

6. On December 12, 2007, MANTILLA faxed Source a list of forty-one (41) IGT game themes he had available for purchase. MANTILLA has never been authorized by IGT to reproduce or distribute copies of IGT gaming software. Later that day, Source indicated to MANTILLA that he/she would like to purchase fifteen (15) IGT games.

7. On December 13, 2007, Source agreed to provide MANTILLA with six (6) IGT 044 boards at a price of $680.00 each and Source would purchase fifteen (15) IGT games from MANTILLA for $800.00 each. An 044 board is a central printed circuit board specially designed and manufactured by IGT to operate the IGT gaming software on their gaming machines. The final

agreement required Source to send MANTILLA six (6) IGT 044 boards and $7,920.00 while MANTILLA would send Source the fifteen (15) IGT programs loaded onto 044 boards. On or about December 14, 2007, Source received instructions from MANTILLA to send the six (6) IGT 044 boards to FE Electronics, Kvueles 15-17 STR, Riga, Latvia, and to write "circuit boards for repair" with a valuation of $3.00 for each board on the commercial invoice. The Source complied, sending six (6) IGT 044 boards from Las Vegas, Nevada to FE Electronics in Riga, Latvia on December 15, 2007.

8.   On or about December 26, 2007, Source received in Las Vegas, Nevada, fifteen (15) 044 boards loaded with IGT gaming programs. The items appeared to Source as not being legitimate IGT components. The differences between the suspect 044 boards and legitimate IGT 044 boards included unusual physical modifications made to the 044 boards, as well as what appeared to be labels bearing counterfeit IGT trademarked logos affixed to the items. A later review of the 044 boards by IGT engineers also determined that they contained illegitimate copies of IGT software. The IGT engineers also found unauthorized modifications to the 044 boards which circumvented the security features contained in the IGT software and thereby allowed the illicit copies of the software to run properly. IGT also opined that the IGT trademarks on the 044 boards also appeared to be counterfeit and confirmed that the marks closely resembled marks that were in use and registered for those goods on the principal register of the United States Patent and Trademark Office.

9.   On December 27, 2007, Source received an e-mail message from MANTILLA using "southeastgaminginc@embarqmail.com," that contained instructions on how to modify the IGT 044 boards so that the recently purchased gaming programs would work. The e-mail message contained a seven-step process to illegitimately modify the boards and included five pictures depicting these modifications. Similarly, an email from CABRERA at rrguez@parks.lv to MANTILLA at southeastgaminginc@earthlink.net (and forwarded to southeastgaming@embarqmail.com) contained six pictures depicting soldered jumper wires used to illicitly circumvent the security measures placed on the 044 boards by IGT.

10.     On May 9, 2008, Source ordered ten (10) IGT conversion kits from MANTILLA. A conversion kit is used to replace a game in an older machine with a new game. MANTILLA explained that the kits would include an 044 board loaded with the selected game theme, and an "E2 microchip" already programmed with a license code, which allowed a counterfeit game to appear to be properly authenticated. The conversion kit would also include a motherboard, and a button harness assembly.

11.     On July 14, 2008, Source received a FedEx package from FE Electronics, Kvueles 1547, Riga, Latvia containing ten (10) conversion kits ordered from MANTILLA. The package contained ten (10) IGT 044 boards, ten (10) button harnesses, and nine (9) motherboards. The IGT 044 boards were identical to the ones received on December 26, 2007. The boards had the same unauthorized physical bypasses and counterfeit trademarks identified by IGT engineers on January 28, 2008. Neither MANTILLA nor CABRERA have ever been authorized by IGT to create or sell conversion kits for IGT gaming machines.

12.     In October of 2008, MANTILLA proposed to Source that they enter into a formal partnership to replace old IGT gaming machines with newer IGT games. MANTILLA provided a cost analysis to Source and mentioned that his "partner" in Riga, Latvia will provide the programming and all the "technology" that they need. In November of 2008, MANTILLA informed Source that he had IGT cabinets but they were in Riga, Latvia. MANTILLA suggested that the older machines could be converted to new IGT games in Riga, Latvia and then shipped to MANTILLA in Florida. The conversion would include not only loading the machines with new gaming software but also replacing the glass decorations and game theme logos on the outside of the gaming machine.

13.     In December of 2008, MANTILLA advised Source that his "partner" in Riga, Latvia would do the refurbishment on the gaming machine cabinets and will "flash the boards." Later in December, 2008, MANTILLA and Source finalized an agreement to refurbish thirty (30), 19 inch IGT gaming machines with new IGT gaming programs selected by Source from the list earlier provided by Mantilla. In early January of 2009, Source received an invoice from FE Electronics for

5

30 LCD screens to be placed on the machines.   The invoice bears CABRERA's name and letterhead for FE Electronics that lists the address as Kvueles 15-17 STR, Riga, Latvia.  The invoice is signed as "Rodolfo Cabrera."

14. CABRERA uses the email account, rrguez@parks.lv.  Emails sent from this account bear the name "Rodolfo Rodriguez Cabrera."  In addition, a review of this account show several emails signed at the bottom as "Rodolfo."

15. MANTILLA is the listed subscriber of the email account, southeastgaminginc@embarqmail.com.  Emails sent from this account bear the name "Henry Mantilla" and a review showed several emails signed at the bottom as "Henry."  In at least one email, MANTILLA refers to CABRERA as his "partner."  This review also showed several communications in 2007 and 2008 between MANTILLA and CABRERA at rrguez@parks.lv containing spreadsheets, customer lists, item descriptions, amount owed, amount received and profits to Southeast Gaming Inc.  Some of the spreadsheets identified customer information, amounts received and commissions owed from FE Electronics to Southeast Gaming Inc.

16. A review of MANTILLA's bank records also show wire transfers of over $400,000 from MANTILLA to CABRERA's bank account between 2007 and 2008 and wire transfers of at least $187,000 from CABRERA's account to MANTILLA during this same time period.

///
///
///

6

Based on the aforementioned information, your affiant believes that probable cause exists to show that RODOLFO RODRIGUEZ CABRERA violated Title 17, United States Code, Sections 1201(a)(1)(A) & 1204(a) - Circumvention of Copyright Protection Systems; Title 17, United States Code, Section 506(a)(1)(A) & Title 18, United States Code, Section 2319(b)(1) - Criminal Copyright Infringement and Title 18, United States Code, Section 2320 - Trafficking in Counterfeit Goods.

_____
NICHOLAS BUGNI
Special Agent, Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me
this ___ day of January, 2009

_____
UNITED STATES MAGISTRATE JUDGE