# SEALED

2009 MAY -6 P 2: 04

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:09-CR-00173-PMP-PAL |
| Plaintiff | |
| VS. | |
| | AFFIDAVIT OF MICHAEL CHU IN SUPPORT OF EXTRADITION REQUEST |
| RODOLFO RODRIGUEZ CABRERA, | |
| Defendant. | |

I, MICHAEL CHU, being duly sworn, depose and state as follows:

1. I am a citizen of the United States, working in Las Vegas, Nevada.  Since 2001, I have been an attorney licensed to practice law by the State of Texas.  Since April 2007 to the present, I have been employed by the U.S. Attorney's Office for the District of Nevada as an Assistant United States Attorney.   My duties include the investigation and prosecution of persons charged with violations of the criminal laws of the United States.  Based on my training and experience, I am familiar with the criminal laws and procedures of the United States.

2. I am one of the prosecutors assigned to the matter of <u>United States v Rodolfo Rodriguez Cabrera</u> and I am familiar with the charges in the Indictment against RODOLFO RODRIGUEZ CABRERA and the evidence that supports those charges.  The investigation of this case is being handled by the Federal Bureau of Investigation ("FBI") and other law enforcement agencies.  As charged in the Indictment, RODOLFO RODRIGUEZ CABRERA is alleged to have participated in a conspiracy to reproduce and distribute counterfeit gaming machine computer programs and casino

1  gaming machines since at least approximately August 2007.

2      3. In particular, CABRERA is believed to be involved in making unauthorized copies of

3  International Game Technology (IGT) computer programs, counterfeit IGT labels designed to be

4  affixed to the computer programs and devices to reproduce unauthorized copies of IGT computer

5  programs. In December of 2007, a confidential source purchased fifteen IGT computer programs

6  from CABRERA's coconspirator in exchange for six (6) blank circuit boards worth $680.00 each

7  and an additional $7,920. On December 14, 2007, CABRERA's co-conspirator instructed the

8  confidential source, to send the six (6) circuit boards to CABRERA's business, FE.Electronic,

9  Kveles 15-17 STR, Riga, Latvia, and to write "circuit boards for repair" with a valuation of $3.00

10 for each board on the commercial invoice. In May and June of 2008, the confidential source

11 purchased ten (10) more unauthorized copies of IGT computer programs from CABRERA's co-

12 conspirator. In July 2008, the confidential source received a FedEx package from FE.Electronic,

13 Kveles 15-17, Riga, Latvia containing the ten (10) unauthorized copies of IGT computer programs.

14 Four of the programs bore counterfeit IGT labels. Neither CABRERA nor his co-conspirator have

15 ever been authorized by IGT to copy IGT computer programs or to use IGT trademarks. During a

16 search of FE.Electronic on April 15, 2009, Latvian law enforcement found counterfeit IGT labels, a

17 device to make counterfeit IGT labels, a device specifically designed to make illegal copies of IGT

18 computer programs and over 100 counterfeit IGT gaming machines.

19      4. CABRERA was the subject of Criminal Complaint Number 2:09-mj-30-GWF

20 issued on January 22, 2009, in the United States District Court for the District of Nevada charging

21 him with: one count of Circumvention of Copyright Protection Systems in violation of Title 17,

22 United States Code, Sections 1201(a)(1)(A) & 1204(a); one count of Criminal Copyright

23 Infringement in violation of Title 17, United States Code, Section 506 and Title 18, United States

24 Code, Section 2319; and one count of Trafficking in Counterfeit Goods in violation of Title 18,

25 United States Code, Section 2320. Based on the Criminal Complaint, George W. Foley, U.S.

26 Magistrate Judge for the District of Nevada, issued a warrant for the arrest of CABRERA on January

1   22, 2009. A criminal complaint is a preliminary charging document issued by a magistrate judge

2   which is used as a basis for an arrest warrant. In order to be convicted of an offense, a defendant

3   must be formally charged by a criminal indictment or information.

4        5. On April 22, 2009, a federal grand jury sitting in the District of Nevada, issued an

5   Indictment (the "Indictment") against CABRERA. The indictment is a formal accusation or

6   charging document issued by a grand jury which is part of the judicial branch of the United States

7   government. Each member of the grand jury must review the evidence presented and the grand jury

8   must determine whether there is probable cause to believe that a crime has been committed and that

9   it is likely that the defendant committed the crime. A certified, true and accurate copy of the

10  Indictment is attached as Exhibit A.

11       6. The indictment charges CABRERA with the following offenses:

12       Count One – conspiracy to commit criminal copyright infringement, in violation of Title

13  17, United States Code, Section 506 and  Title 18, United States Code, Section 2319, trafficking in

14  counterfeit labels, in violation of Title 18, United States Code, Section 2318 and trafficking in

15  counterfeit goods, in violation of Title 18, United States Code, Section 2320, all of which is in

16  violation of Title 18, United States Code, Section 371 and carries a maximum sentence of five years

17  imprisonment;

18       Count Two – criminal copyright infringement and attempted criminal copyright

19  infringement, in violation of Title 17, United States Code, Section 506 and Title 18, United States

20  Code, Sections 2319 and 2, which carries a maximum sentence of five years imprisonment;

21       Count Three – criminal copyright infringement and attempted criminal copyright

22  infringement, in violation of Title 17, United States Code, Section 506 and Title 18, United States

23  Code, Sections 2319 and 2, which carries a maximum sentence of five years imprisonment;

24       Count Four – trafficking in counterfeit labels, in violation of Title 18, United States Code,

25  Sections 2319 and 2, which carries a maximum sentence of five years imprisonment;

26       Count Five - trafficking in counterfeit labels, in violation of Title 18, United States Code,

Sections 2319 and 2, which carries a maximum sentence of five years imprisonment;

Count Six – trafficking in counterfeit goods, in violation of Title 18, United States Code, Sections 2320 and 2, which carries a maximum sentence of ten years.

Count Seven – trafficking in counterfeit goods, in violation of Title 18, United States Code, Sections 2320 and 2, which carries a maximum sentence of ten years.

7. On April 22, 2009, a United States Magistrate Judge for the District of Nevada issued an arrest warrant for CABRERA for the offenses charged in the Indictment. A certified, true and accurate copy of the arrest warrant for CABRERA is attached as Exhibit B.

8. A violation of each of the statutes cited in the Indictment is a felony under United States law. Each of these statutes was the duly enacted law of the United States at the time that the offenses were committed and the Indictment was filed, and continue to be in effect. Each of these offenses are self-explanatory. The relevant portions of these statutes are attached as Exhibit C.

9. The Indictment also includes thirteen forfeiture allegations related to the forfeiture of any property, proceeds, counterfeit items, or any items used to reproduce or distribute counterfeit items. Forfeiture Allegations One, Two, Four, Five, Eight, Nine, and Thirteen relate to the forfeiture of any property or proceeds obtained through the commission of any of the alleged criminal statutes. Forfeiture Allegations Three, Six, Seven, Eleven, and Twelve relate to the forfeiture of any counterfeit items or any items used to reproduce or distribute any counterfeit items possessed by RODOLFO RODRIGUEZ CABRERA or his co-conspirator. The relevant portions of the statutes related to forfeiture are also attached in Exhibit C.

10. The statute of limitations for prosecuting the crimes charged in the Indictment is five years, pursuant to Title 18, United States Code, Section 3282. The relevant portions of this statute are also included as part of Exhibit C. The statute of limitations merely require that a defendant be formally charged within a certain time. In this case, RODOLFO RODRIGUEZ CABRERA was charged within five years of the date on which the offenses were committed. Because all the crimes charged in the Indictment issued on April 22, 2009, occurred, or continued to occur, no earlier than

4

1   August 2007, the Indictment was filed within the prescribed time period.

2          11.   RODOLFO RODRIGUEZ CABRERA has not been tried or convicted of the offenses

3   charged in the Indictment, nor has he been sentenced to serve any term of imprisonment in

4   connection with this case.  The facts of this case are set forth in more detail in the affidavit of

5   Federal Bureau of Investigation Special Agent Nicholas E. Bugni, attached as Exhibit D, which I

6   have reviewed.  A photograph of RODOLFO RODRIGUEZ CABRERA is attached as Exhibit E.

7   The photograph was obtained from a visa application submitted by CABRERA to the U.S.

8   Department of State.  Additionally, RODOLFO RODRIGUEZ CABRERA was identified and

9   provisionally arrested by Latvian Law Enforcement pursuant to a request by the United States on

10  April 15, 2009.  I attest that the evidence indicates that RODOLFO RODRIGUEZ CABRERA is

11  guilty of the offenses for which extradition is sought.

12

13

14                                                        MICHAEL CHU
                                                          Assistant United States Attorney
15

16
    Signed and sworn to before me
17  this ___ day of May 2009

18

19  UNITED STATES MAGISTRATE JUDGE
    DISTRICT OF NEVADA
20

21

22

23

24

25

26

                                    5

1

## LIST OF EXHIBITS

2

| | |
|---|---|
| Exhibit A | Certified copy of Indictment, Case No. 2:09-cr-173-PMP-PAL |
| Exhibit B | Certified copy of arrest warrant for RODOLFO RODRIGUEZ CABRERA |
| Exhibit C | Relevant portions of statutes |
| Exhibit D | Affidavit of FBI Agent Nicholas E. Bugni |
| Exhibit E | Photograph and identification information of RODOLFO RODRIGUEZ CABRERA |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

6

1   GREGORY BROWER
    United States Attorney
2   MICHAEL CHU
    Assistant United States Attorney
3   333 Las Vegas Blvd., South, Suite 5000
    Las Vegas, Nevada 89101
4   (702) 388-6336

5   LANNY A. BREUER
    Assistant Attorney General
6   THOMAS S. DOUGHERTY
    Trial Attorney
7   Computer Crime and Intellectual Property Section
    Criminal Division, U.S. Department of Justice
8   1301 New York Avenue, NW, Suite 600
    Washington, DC 20005
9   (202) 514-1026

10

```
FILED



CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

BY _____ DEPUTY
```

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| 14  UNITED STATES OF AMERICA, | )  CRIMINAL INDICTMENT |
| 15                     PLAINTIFF, | )  <br> )  2:09-cr- _173_ |
| 16  VS. | )  <br> )  VIOLATIONS: |
| 17  RODOLFO RODRIGUEZ CABRERA, and <br>     HENRY MANTILLA, | )  <br> )  18 U.S.C. § 371 - Conspiracy |
| 18                     DEFENDANTS. | )  17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § <br> )  2319(b)(1) - Criminal Copyright Infringement |

17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b)(1) - Criminal Copyright Infringement
18 U.S.C. §§ 2318(a)(1) and (c)(3) - Trafficking in Counterfeit Labels
18 U.S.C. § 2320(a) - Trafficking in Counterfeit Goods
17 U.S.C. § 506(b) and 509(a); 18 U.S.C. § 2318(d)and 18 U.S.C. § 2320(b) - Forfeiture

23  **THE GRAND JURY CHARGES THAT:**

24  . . .

25  . . .

26

1

Exhibit A

## COUNT ONE
Conspiracy

1.     Beginning on a date unknown to the grand jury, but not later than on or about August 31, 2007, and continuing through on or about April 15, 2009, in the State and Federal District of Nevada, and elsewhere, defendants

**RODOLFO RODRIGUEZ CABRERA,** and
**HENRY MANTILLA,**

and others known and unknown to the Grand Jury, conspired and agreed with each other to:

(A) criminally infringe on a copyright by distributing at least ten (10) infringing copies of one or more copyrighted works, namely International Game Technology (IGT) computer programs, without the authorization of the copyright holder, with a total retail value of more than $2,500, during a 180-day period, for purposes of private financial gain and commercial advantage, in violation of Title 17, United States Code, Section 506(a)(1)(A), and Title 18, United States Code, Section 2319(b)(1);

(B) knowingly traffic in counterfeit and illicit labels affixed to or accompanying, or designed to be affixed to or accompanying a copy of IGT computer programs or other copyrighted works, each of which were copies of copyrighted works, in violation of Title 18, United States Code, Sections 2318(a) and (c)(3); and

(C) intentionally traffic in goods, namely counterfeit IGT gaming software and IGT gaming machine parts, and knowingly used a counterfeit mark on and in connection with such goods, in violation of Title 18, United States Code, Section 2320(a).

**Manner and Means**

During the time period set forth above, the defendants, **RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA** carried out the conspiracy through, among others, the following manner and means:

2.     It was part of the conspiracy that during the time period alleged above, defendants **RODOLFO RODRIGUEZ CABRERA,** owner of FE.Electronic, Kveles 15-17 STR,

2

1   Riga. Latvia, and **HENRY MANTILLA**, owner of Southeast Gaming Incorporated, 735 NE 19th

2   Place, Suites 6 & 7, Cape Coral, Florida (previously located at 944 Country Club Boulevard, Cape

3   Coral, Florida until approximately April of 2008), obtained copies of IGT computer programs used

4   to run IGT gaming machines as well as game theme glass designs associated with the various IGT

5   game themes, all without the permission of the copyright owner, IGT.

6          3.      It was further part of the conspiracy that defendants   **RODOLFO**

7   **RODRIGUEZ CABRERA and HENRY MANTILLA** made unauthorized copies of copyrighted

8   works, namely IGT computer programs, placed counterfeit labels bearing IGT trademarks registered

9   by IGT on the Principal Registry of the United States Patent and Trademark Office on the computer

10  programs and installed the computer programs in gaming machine cabinets bearing counterfeit IGT

11  game theme glass. The defendants, RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,

12  then sold the counterfeit IGT computer programs and counterfeit IGT gaming machines for

13  commercial advantage and private financial gain.

14         4.      It was also part of the conspiracy that **RODOLFO RODRIGUEZ CABRERA**

15  was primarily responsible for reproducing the unauthorized copies of IGT gaming computer programs,

16  counterfeit IGT labels and other IGT gaming machine components and defendant, **HENRY**

17  **MANTILLA,** was primarily responsible for securing customers in the United States for the

18  counterfeit IGT products.

19         5.      It was further part of the conspiracy that defendants **RODOLFO**

20  **RODRIGUEZ CABRERA and HENRY MANTILLA** distributed counterfeit IGT computer

21  programs bearing counterfeit IGT labels in Las Vegas, Nevada, and elsewhere, without the permission

22  of the copyright and trademark owner, IGT.

23  **Overt Acts**

24         6.      On or about October 19, 2007, defendant **RODOLFO RODRIGUEZ**

25  **CABRERA** sent an email from rrguez@parks.lv to defendant **HENRY MANTILLA** at

26  southeastgaminginc@earthlink.net with six photographs attached showing how to modify IGT 044

3

1    boards so that they will run unauthorized copies of IGT computer programs. An "044 board" is a

2    printed circuit board specially designed and manufactured by IGT to operate IGT computer programs

3    on their gaming machines.

4              7.    On or about November 6, 2007, defendant **HENRY MANTILLA** sent a draft

5    email from southeastgaminginc@embarqmail.net to defendant **RODOLFO RODRIGUEZ**

6    **CABRERA** at rrguez@parks.lv that stated, "I sent Henry all the necessary information so that we can

7    help you, I can offer a new hand tool which is capable of making up to 100 games a day 039, I am also

8    very [g]ood library 044, respondme [*sic*] if you have any interest in working with me. Henry was try

9    to talk to you for send me 20 games do you want to work with us or not? Greetings Rodolfo."

10             8.    On or about December 13, 2007, defendant **HENRY MANTILLA** agreed to

11   sell fifteen (15) IGT game theme computer programs to a confidential human source (CHS) in

12   exchange for six (6) IGT 044 boards and $7,920.00.

13             9.    On or about December 14, 2007, defendant, **HENRY MANTILLA** instructed

14   the CHS to send the six (6) IGT "044 boards" to FE.Electronic, Kveles 15-17 STR, Riga, Latvia. and

15   to write "circuit boards for repair" with a valuation of $3.00 for each board on the commercial invoice.

16             10.   On or about December 26, 2007, defendant **HENRY MANTILLA** sent the

17   CHS fifteen (15) IGT game theme computer programs, each bearing counterfeit IGT labels.

18             11.   On or about June 20, 2008, defendant **HENRY MANTILLA** agreed to sell the

19   CHS ten (10)  IGT conversion kits, each containing IGT game theme computer programs.  A

20   conversion kit is a group of components used to change a game theme on a gaming machine.

21             12.   On or about July 14, 2008, CHS received a FedEx package from FE.Electronic.

22   Kveles 15-17, Riga, Latvia. containing ten (10) conversion kits. The package contained ten (10) IGT

23   044 boards with flash cards loaded with IGT game theme computer programs, ten (10) button

24   harnesses, and nine (9) motherboards. Four of the flash cards bore counterfeit IGT labels.

25   . . .

26 . . . .

4

13.   On or about January 27, 2009, defendant **HENRY MANTILLA** agreed to sell the CHS 30 complete IGT gaming machines that **MANTILLA** claimed he would obtain from "Rodolfo."

14.   On or about February 10, 2009, defendant **HENRY MANTILLA** agreed to send CHS a programming device specifically designed to copy IGT computer programs.

15.   On or about March 3, 2009, the CHS received a programming device and a compact disk containing a program titled "Quad Clone" via a overnight courier, bearing a return address of FE.Electronic, Kveles 15-17 Str, Riga, Latvia.

16.   On or about March 3, 2009, defendant **HENRY MANTILLA** instructed CHS to purchase a "p-touch" printer and **MANTILLA** stated that he would provide CHS with the templates to make counterfeit IGT labels to be placed on counterfeit IGT computer programs.

17   On or about March 17, 2009, defendant **HENRY MANTILLA** sent CHS a DVD-R containing at least 42 IGT game theme computer programs to be copied using the programming device and the "Quad Clone" program.

18.   On or about April 10, 2009, defendant **RODOLFO RODRIGUEZ CABRERA,** shipped 41 IGT gaming machine cabinets from Riga, Latvia, to defendant **HENRY MANTILLA** in Cape Coral Florida. All of the gaming machine cabinets were to be installed with counterfeit IGT computer programs and 30 of the gaming machines were to be sold to the CHS.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
Criminal Copyright Infringement and Attempted Criminal Copyright Infringement;
Aiding and Abetting

19.   The factual allegations set forth in Count One are incorporated by reference.

20.   On or about December 26, 2007, in the State and Federal District of Nevada and elsewhere,

**RODOLFO RODRIGUEZ CABRERA, and
HENRY MANTILLA,**

5

1  defendants herein, did willfully, and for the purpose of commercial advantage and private financial

2  gain, infringe and attempt to infringe a copyright by reproducing and distributing, during a 180-day

3  period, ten (10) or more copies of one (1) or more copyrighted works, to wit: at least fifteen (15)

4  copies of IGT computer programs, which have a total retail value of more than $2,500, in violation

5  of Title 17, United States Code, Section 506(a)(1)(A), and Title 18, United States Code, Sections

6  2319(a)(1) and 2.

7                          **COUNT THREE**
                Criminal Copyright Infringement and Attempted Criminal Copyright Infringement;
8                              Aiding and Abetting

9        21.   The factual allegations set forth in Count One are incorporated by reference.

10       22.   On or about July 14, 2008, in the State and Federal District of Nevada and

11  elsewhere,

12                     **RODOLFO RODRIGUEZ CABRERA, and**
                       **HENRY MANTILLA,**

13

14  defendants herein, did willfully, and for the purpose of commercial advantage and private financial

15  gain, infringe and attempt to infringe a copyright by reproducing and distributing, during a 180-day

16  period, ten (10) or more copies of one (1) or more copyrighted works, to wit: at least ten (10) copies

17  of IGT computer programs, which have a total retail value of more than $2,500, in violation of Title

18  17, United States Code, Section 506(a)(1)(A), and Title 18, United States Code, Sections 2319(a)(1)

19  and 2.

20                          **COUNT FOUR**
                          Trafficking in Counterfeit Labels;
21                             Aiding and Abetting

22       23.   The factual allegations set forth in Count One are incorporated by reference.

23       24.   On or about December 26, 2007, in the State and Federal District of Nevada

24  and elsewhere,

25                     **RODOLFO RODRIGUEZ CABRERA, and**
                       **HENRY MANTILLA,**

26   · · ·

6

defendants herein, knowingly did traffic in counterfeit labels affixed to copyrighted works, to wit: labels bearing counterfeit IGT registered trademarks affixed to at least fifteen (15) IGT computer programs, in violation of Title 18, United States Code, Sections 2318(a)(1), 2318(c)(3) and 2.

## COUNT FIVE
### Trafficking in Counterfeit Labels;
### Aiding and Abetting

25.  The factual allegations set forth in Count One are incorporated by reference.

26.  On or about July 14, 2008,  in the State and Federal District of Nevada and elsewhere,

**RODOLFO RODRIGUEZ CABRERA, and**
**HENRY MANTILLA,**

defendants herein, knowingly did traffic in counterfeit labels affixed to copyrighted works, to wit: labels bearing counterfeit IGT registered trademarks affixed to at least four (4) IGT computer programs, in violation of Title 18, United States Code, Sections 2318(a)(1), 2318(c)(3) and 2.

## COUNT SIX
### Trafficking and Attempted Trafficking in Counterfeit Goods;
### Aiding and Abetting

27.  The factual allegations set forth in Count One are incorporated by reference.

28.  On or about December 26, 2007, in the State and Federal District of Nevada and elsewhere,

**RODOLFO RODRIGUEZ CABRERA, and**
**HENRY MANTILLA,**

defendants herein, did intentionally traffic and attempt to traffic in goods, specifically, IGT gaming machine parts and computer programs, while knowingly using on and in connection with such goods counterfeit marks, to wit: spurious marks identical to and substantially indistinguishable from International Game Technology's "IGT" logo, marks that were in use and registered for those goods

7

1  on the principal register of the United States Patent and Trademark Office, the use of which counterfeit

2  marks were likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United

3  States Code, Sections 2320(a) and 2.

4  **COUNT SEVEN**
Trafficking and Attempted Trafficking in Counterfeit Goods;

5  Aiding and Abetting

6         29.    The factual allegations set forth in Count One are incorporated by reference.

7

8         30.    On or about July 14, 2008, in the State and Federal District of Nevada and

9  elsewhere,

10            **RODOLFO RODRIGUEZ CABRERA, and
HENRY MANTILLA,**

11

12  defendants herein, did intentionally traffic and attempt to traffic in goods, specifically, IGT gaming

13  machine conversion kits and computer programs, while knowingly using on and in connection with

14  such goods counterfeit marks, to wit, spurious marks identical to and substantially indistinguishable

15  from International Game Technology's "IGT" logo, marks that were in use and registered for those

16  goods on the principal register of the United States Patent and Trademark Office, the use of which

17  counterfeit marks were likely to cause confusion, to cause mistake, and to deceive, in violation of Title

18  18, United States Code, Sections 2320(a) and 2.

19  . . .

20  . . .

21  . . .

22  . . .

23  . . .

24  . . .

25  . . .

26  . . .

8

## FORFEITURE ALLEGATION ONE
(Conspiracy)

31.    The allegations contained in Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

32.    Upon a conviction of the felony offenses charged in Count One of this Indictment,

**RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

defendants herein, shall forfeit to the United States of America, any property, constituting, or derived from, proceeds traceable to violations of Title 18, United States Code, Sections 2318, 2319, and 2320 specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B) or a conspiracy to commit such offenses up to $5,000,000.00 in United States Currency.

33.    If any property being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant -

       a.    cannot be located upon the exercise of due diligence;

       b.    has been transferred or sold to, or deposited with, a third party;

       c.    has been placed beyond the jurisdiction of the court;

       d.    has been substantially diminished in value; or

       e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America to seek forfeiture of any properties of the defendants up to $5,000,000.00 in United States Currency.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); Title 18, United States Code, Sections 1956(c)(7)(A), 1961(1)(B), 2318, 2319, and 2320.

9

## FORFEITURE ALLEGATION TWO
(Conspiracy)

34.     The allegations contained in Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

35.     Upon a conviction of the felony offenses charged in Count One of this Indictment,

**RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

defendants herein, shall forfeit to the United States of America, any property, constituting, or derived from, proceeds traceable to violations of Title 18, United States Code, Sections 2319 and 2320 specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(D) or a conspiracy to commit such offenses up to $5,000,000.00 in United States Currency.

36.     If any property being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant -

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America to seek forfeiture of any properties of the defendants up to $5,000,000.00 in United States Currency.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); Title 18, United States Code, Sections 1956(c)(7)(D), 2319, and 2320.

. . .

10

## FORFEITURE ALLEGATION THREE
(Conspiracy)

37.     The allegations contained in Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 2323(b).

38.     Upon a conviction of the felony offenses charged in Count One of this Indictment,

**RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

defendants herein, shall forfeit to the United States of America, any article, the making or trafficking of which violates Title 17, United States Code, Section 506 and Title 18, United States Code, Sections 2318, 2319, and 2320.

All pursuant to Title 17, United States Code, Section 506; Title 18, United States Code, Sections 2318, 2319, 2320, and 2323.

## FORFEITURE ALLEGATION FOUR
(Conspiracy)

39.     The allegations contained in Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 2323(b).

40.     Upon a conviction of the felony offenses charged in Count One of this Indictment,

**RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

defendants herein, shall forfeit to the United States of America, any property used, or intended to be used, in any manner or part to commit or facilitate the commission of violations of Title 17, United States Code, Section 506; Title 18, United States Code, Sections 2318, 2319, and 2320 up to $5,000,000.00 in United States Currency.

11

1    All pursuant to Title 17, United States Code, Section 506; Title 18, United States Code,

2    Sections 2318, 2319, 2320, and 2323.

3    ## FORFEITURE ALLEGATION FIVE
(Conspiracy)

4

5    41.    The allegations contained in Count One of this Indictment are hereby realleged

6    and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States

7    Code, Section 2323(b).

8    42.    Upon a conviction of the felony offenses charged in Count One of this

9    Indictment,

10    **RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

11    defendants herein, shall forfeit to the United States of America, any property constituting or derived

12    from any proceeds obtained directly or indirectly as a result of violations of Title 17, United States

13    Code, Section 506; Title 18, United States Code, Sections 2318, 2319, and 2320 up to $5,000,000.00

14    in United States Currency.

15    43.    If any property being subject to forfeiture pursuant to Title 21, United States

16    Code, Section 853(p), as a result of any act or omission of the defendant -

17    a.    cannot be located upon the exercise of due diligence;

18    b.    has been transferred or sold to, or deposited with, a third party;

19    c.    has been placed beyond the jurisdiction of the court;

20    d.    has been substantially diminished in value; or

21    e.    has been commingled with other property which cannot be divided

22    without difficulty,

23    it is the intent of the United States of America to seek forfeiture of any properties of the defendants

24    up to $5,000,000.00 in United States Currency.

25    All pursuant to Title 17, United States Code, Section 506; Title 18, United States Code,

26    Sections 2318, 2319, 2320, and 2323; and Title 21, United States Code, Section 853(p).

12

## FORFEITURE ALLEGATION SIX
(Criminal Copyright Infringement and Attempted Criminal Copyright Infringement)

44.    The allegations contained in Counts Two and Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 17, United States Code, Section 506 and Title 28, United States Code, Sections 2461(c).

45.    Upon a conviction of the felony offenses charged in Counts Two and Three of this Indictment,

**RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

defendants herein, shall forfeit to the United States of America, all infringing items and all implements, devices, and equipment used in violations of Title 17, United States Code. Section 506 and Title 18, United States Code, Section 2319.

All pursuant to Title 17, United States Code, Section 506 and Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 2319.

## FORFEITURE ALLEGATION SEVEN
(Criminal Copyright Infringement and Attempted Criminal Copyright Infringement)

46.    The allegations contained in Counts Two and Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 17, United States Code, Section 509 and Title 28, United States Code, Section 2461(c) .

47.    Upon a conviction of the felony offenses charged in Counts Two and Three of this Indictment,

**RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

defendants herein, shall forfeit to the United States of America, all infringed items manufactured, reproduced, distributed, sold or used, intended for use or possessed with intent to use; all plates, molds, matrices, master tapes, film negatives, other articles by means of which such may be reproduced; and all equipment used for manufacturing, reproducing, or assembling such items in violations of Title 17, United States Code, Section 506 and Title 18, United States Code, Section 2319.

13

1    All pursuant to Title 17, United States Code, Section 509 and Title 28, United States

2    Code, Section 2461(c); Title 17, United States Code, Section 506; Title 18, United States Code,

3    Sections 2319.

4                        **FORFEITURE ALLEGATION EIGHT**
           (Criminal Copyright Infringement and Attempted Criminal Copyright Infringement)
5

6          48.    The allegations contained in Counts Two and Three of this Indictment are

7    hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title

8    18, United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(D) and Title 28, United States Code,

9    Section 2461(c).

10         49.    Upon a conviction of the felony offenses charged in Counts Two and Three of

11   this Indictment.

12                **RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

13   defendants herein, shall forfeit to the United States of America, any property, constituting, or derived

14   from. proceeds traceable to violations of Title 18, United States Code, Section, 2319 a specified

15   unlawful activity as defined in Title 18, United States Code, Sections 1956(c)(7)(D) or a conspiracy

16   to commit such offenses up to $5,000,000.00 in United States Currency.

17         50.    If any property being subject to forfeiture pursuant to Title 18, United States

18   Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act

19   or omission of the defendant -

20              a.    cannot be located upon the exercise of due diligence;

21              b.    has been transferred or sold to, or deposited with, a third party;

22              c.    has been placed beyond the jurisdiction of the court;

23              d.    has been substantially diminished in value; or

24              e.    has been commingled with other property which cannot be divided

25                    without difficulty,

26    . . .

                                              14

1  it is the intent of the United States of America to seek forfeiture of any properties of the defendant up

2  to $5,000,000.00 in United States Currency.

3          All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 2319, and

4  1956(c)(7)(D); and Title 28, United States Code, Section 2461(c); and Title 21, United States Code,

5  Section 853(p).

6                          **FORFEITURE ALLEGATION NINE**
                (Criminal Copyright Infringement and Attempted Criminal Copyright Infringement)

7

8          51.     The allegations contained in Counts Two and Three of this Indictment are

9  hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title

10  18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

11          52.     Upon a conviction of the felony offenses charged in Counts Two and Three of

12  this Indictment,

13                  **RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

14  defendants herein, shall forfeit to the United States of America, any property, constituting, or derived

15  from, proceeds traceable to violations of Title 18, United States Code, Section 2319 a specified

16  unlawful activity as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B)

17  or a conspiracy to commit such offenses up to $5,000,000.00 in United States Currency.

18          53.     If any property being subject to forfeiture pursuant to Title 18, United States

19  Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act

20  or omission of the defendant -

21                  a.      cannot be located upon the exercise of due diligence;

22                  b.      has been transferred or sold to, or deposited with, a third party;

23                  c.      has been placed beyond the jurisdiction of the court;

24                  d.      has been substantially diminished in value; or

25                  e.      has been commingled with other property which cannot be divided

26                          without difficulty,

15

1    it is the intent of the United States of America to seek forfeiture of any properties of the defendant up

2    to $5,000,000.00 in United States Currency.

3                All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

4    States Code, Section 2461(c); Title 18, United States Code, Sections 1956(c)(7)(A), 1961(1)(B), and

5    2319; and Title 21, United States Code, Section 853(p).

6                          **FORFEITURE ALLEGATION TEN**
                        (Trafficking in Counterfeit Labels and Goods)

7

8                54.    The allegations contained in Counts Four through Seven of this Indictment are

9    hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title

10   18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

11               55.    Upon a conviction of the felony offenses charged in Counts Four through Seven

12   of this Indictment,

13               **RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA**,

14   defendants herein, shall forfeit to the United States of America, any property, constituting, or derived

15   from, proceeds traceable to violations of Title 18, United States Code, Sections 2318 and 2320

16   specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and

17   1961(1)(B) or a conspiracy to commit such offenses up to $5,000,000.00 in United States Currency.

18               56.    If any property being subject to forfeiture pursuant to Title 18, United States

19   Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act

20   or omission of the defendant -

21                          a.    cannot be located upon the exercise of due diligence;

22                          b.    has been transferred or sold to, or deposited with, a third party;

23                          c.    has been placed beyond the jurisdiction of the court;

24                          d.    has been substantially diminished in value; or

25                          e.    has been commingled with other property which cannot be divided

26                                without difficulty,

16

1    it is the intent of the United States of America to seek forfeiture of any properties of the defendant up

2    to $5,000,000.00 in United States Currency.

3        All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

4    States Code, Section 2461(c); Title 18, United States Code, Sections 1956(c)(7)(A), 1961(1)(B), 2318

5    and 2320; and Title 21, United States Code, Section 853(p).

6                    **FORFEITURE ALLEGATION ELEVEN**
                    (Trafficking in Counterfeit Labels and Goods)

7

8        57.    The allegations contained in Counts Four through Seven of this Indictment are

9    hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title

10   17, United States Code, Section 506 and Title 28, United States Code, Sections 2461(c).

11       58.    Upon a conviction of the felony offenses charged in Counts Four through Seven

12   of this Indictment,

13                    **RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

14   defendants herein, shall forfeit to the United States of America, all infringing items and all

15   implements, devices, and equipment used in violations of Title 17, United States Code, Section 506;

16   Title 18, United States Code, Sections 2318 and 2320.

17       All pursuant to Title 17, United States Code, Section 506 and Title 28, United States

18   Code, Section 2461(c); and Title 18, United States Code, Sections 2318 and 2320.

19                    **FORFEITURE ALLEGATION TWELVE**
20        (Criminal Copyright Infringement and Attempted Criminal Copyright Infringement)

21       59.    The allegations contained in Counts Four through Seven of this Indictment are

22   hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title

23   17, United States Code, Section 509 and Title 28, United States Code, Section 2461(c) .

24       60.    Upon a conviction of the felony offenses charged in Counts Four through Seven

25   of this Indictment,

26                    **RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

1  defendants herein, shall forfeit to the United States of America, all infringed items manufactured,

2  reproduced, distributed, sold or used, intended for use or possessed with intent to use; all plates, molds,

3  matrices, master tapes, film negatives, other articles by means of which such may be reproduced; and

4  all equipment used for manufacturing, reproducing, or assembling such items in violations of Title 17,

5  United States Code, Section 506; Title 18, United States Code, Sections 2318 and 2320.

6          All pursuant to Title 17, United States Code, Section 509 and Title 28, United States

7  Code, Section 2461(c); Title 17, United States Code, Section 506; Title 18, United States Code,

8  Sections 2318 and 2320.

9                        **FORFEITURE ALLEGATION THIRTEEN**
        (Criminal Copyright Infringement and Attempted Criminal Copyright Infringement)

10

11          61.    The allegations contained in Counts Six and Seven of this Indictment are hereby

12  realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18,

13  United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(D) and Title 28, United States Code,

14  Section 2461(c).

15          62.    Upon a conviction of the felony offenses charged in Counts Six and Seven of

16  this Indictment,

17                **RODOLFO RODRIGUEZ CABRERA and HENRY MANTILLA,**

18  defendants herein, shall forfeit to the United States of America, any property, constituting, or derived

19  from, proceeds traceable to violations of Title 18, United States Code, Section, 2320 a specified

20  unlawful activity as defined in Title 18, United States Code, Sections 1956(c)(7)(D) or a conspiracy

21  to commit such offenses up to $5,000,000.00 in United States Currency.

22          63.    If any property being subject to forfeiture pursuant to Title 18, United States

23  Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act

24  or omission of the defendant -

25                a.    cannot be located upon the exercise of due diligence;

26                b.    has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided
without difficulty,

it is the intent of the United States of America to seek forfeiture of any properties of the defendant up
to $5,000,000.00 in United States Currency.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United
States Code, Section 2461(c); Title 18, United States Code, Sections 2320 and 1956(c)(7)(D); and
Title 21, United States Code, Section 853(p).

**DATED**: this _____ day of April 2009

**A TRUE BILL.**

/s/
FOREPERSON OF THE GRAND JURY

GREGORY A. BROWER
United States Attorney

MICHAEL CHU
Assistant United States Attorney

I hereby attest and certify on 5-5-09
that the foregoing document is a full, true
and correct copy of the original on file in my
legal custody.

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

By D. Saavedra   Deputy Clerk

LANNY A. BREUER
Assistant Attorney General

THOMAS S. DOUGHERTY
Trial Attorney
Criminal Division
U.S. Department of Justice

19

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of

I hereby attest and certify on ____ 5505
that the foregoing document is a full, true
and correct copy of the original on file in my
legal custody.

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

By _D. Saavedra_ Deputy Clerk

United States of America
v.

RODOLFO RODRIGUEZ CABRERA

*Defendant*

)
)
)  Case No.  2:09-CR-173
)
)

## ARREST WARRANT

To:  Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*  RODOLFO RODRIGUEZ CABRERA

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☐ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

18/371 - CONSPIRACY
17/506(a)(1)(A) &18/2319(b)(1) - CRIMINAL COPYRIGHT INFRINGEMENT
18/2318(a)(1) &(c)(3) - TRAFFICKING IN COUNTERFEIT LABELS
18/2320(a) - TRAFFICKING IN COUNTERFEIT GOODS
18/2 - AIDING AND ABETTING

LANCE S. WILSON

CLERK

_Lance S. Wilson_

(By) DEPUTY CLERK



April 22, 2009    Las Vegas, Nevada

DATE

| Return |
| --- |

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____

_____
*Arresting officer's signature*

_____
*Printed name and title*

Exhibit B

AO 442 (Rev. 01/09) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:

Known aliases:

Last known residence:

Prior addresses to which defendant/offender may still have ties:


Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:

Social Security number:

Height:                    Weight:

Sex:                        Race:

Hair:                     Eyes:

Scars, tattoos, other distinguishing marks:


History of violence, weapons, drug use:


Known family, friends, and other associates *(name, relation, address, phone number)*:


FBI number:

Complete description of auto:


Investigative agency and address:


Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:


Date of last contact with pretrial services or probation officer *(if applicable)*:

EXHIBIT C

RELEVANT PORTION OF STATUTES

**18 U.S.C. § 2. Aiding and Abetting**

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**18 U.S.C. § 371. Conspiracy to commit offense or to defraud United States**

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both. [...]

**17 U.S.C. § 506. Criminal offenses**
(a) Criminal Infringement.—

(1) In general.— Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed—
(A) for purposes of commercial advantage or private financial gain;

(b) Forfeiture and Destruction.— When any person is convicted of any violation of subsection (a), the court in its judgment of conviction shall, in addition to the penalty therein prescribed, order the forfeiture and destruction or other disposition of all infringing copies or phonorecords and all implements, devices, or equipment used in the manufacture of such infringing copies or phonorecords.

**18 U.S.C. § 2319. Criminal infringement of a copyright**
(a) Any person who violates section 506 (a) (relating to criminal offenses) of title 17 shall be punished as provided in subsections (b), (c), and (d) and such penalties shall be in addition to any other provisions of title 17 or any other law.

(b) Any person who commits an offense under section 506 (a)(1)(A) of title 17—
(1) shall be imprisoned not more than 5 years, or fined in the amount set forth in this title, or both, if the offense consists of the reproduction or distribution, including by electronic means, during any 180-day period, of at least 10 copies or phonorecords, of 1 or more copyrighted works, which have a total retail value of more than $2,500.

**18 U.S.C. § 2318. Trafficking in counterfeit labels, illicit labels, or counterfeit documentation or packaging**
(a) Whoever, in any of the circumstances described in subsection (c), knowingly traffics in—
(1) a counterfeit label or illicit label affixed to, enclosing, or accompanying, or designed to be affixed to, enclose, or accompany—
(A) a phonorecord;
(B) a copy of a computer program;
(C) a copy of a motion picture or other audiovisual work;
(D) a copy of a literary work;
(E) a copy of a pictorial, graphic, or sculptural work;
(F) a work of visual art; or
(G) documentation or packaging; or
(2) counterfeit documentation or packaging,
shall be fined under this title or imprisoned for not more than 5 years, or both.

(c) The circumstances referred to in subsection (a) of this section are— [...]
(3) the counterfeit label or illicit label is affixed to, encloses, or accompanies, or is designed to be affixed to, enclose, or accompany—
(A) a phonorecord of a copyrighted sound recording or copyrighted musical work;
(B) a copy of a copyrighted computer program; ·
(C) a copy of a copyrighted motion picture or other audiovisual work;
(D) a copy of a literary work;
(E) a copy of a pictorial, graphic, or sculptural work;
(F) a work of visual art; or
(G) copyrighted documentation or packaging; [...]

(d) When any person is convicted of any violation of subsection (a), the court in its judgment of conviction shall in addition to the penalty therein prescribed, order the forfeiture and destruction or other disposition of all counterfeit labels or illicit labels and all articles to which counterfeit labels or illicit labels have been affixed or which were intended to have had such labels affixed, and of any equipment, device, or material used to manufacture, reproduce, or assemble the counterfeit labels or illicit labels.

**18 U.S.C. § 2320. Trafficking in counterfeit goods or services**
(a) Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services, or intentionally traffics or attempts to traffic in labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive, shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, be fined not more than $5,000,000.

(b) (1) The following property shall be subject to forfeiture to the United States and no property right shall exist in such property:

(A) Any article bearing or consisting of a counterfeit mark used in committing a violation of subsection (a).

(B) Any property used, in any manner or part, to commit or to facilitate the commission of a violation of subsection (a).

(2) The provisions of chapter 46 of this title relating to civil forfeitures, including section 983 of this title, shall extend to any seizure or civil forfeiture under this section. At the conclusion of the forfeiture proceedings, the court, unless otherwise requested by an agency of the United States, shall order that any forfeited article bearing or consisting of a counterfeit mark be destroyed or otherwise disposed of according to law.

(3) (A) The court, in imposing sentence on a person convicted of an offense under this section, shall order, in addition to any other sentence imposed, that the person forfeit to the United States—

(i) any property constituting or derived from any proceeds the person obtained, directly or indirectly, as the result of the offense;

(ii) any of the person's property used, or intended to be used, in any manner or part, to commit, facilitate, aid, or abet the commission of the offense; and

(iii) any article that bears or consists of a counterfeit mark used in committing the offense.

(B) The forfeiture of property under subparagraph (A), including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the procedures set forth in section 413 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853), other than subsection (d) of that section. Notwithstanding section 413(h) of that Act, at the conclusion of the forfeiture proceedings, the court shall order that any forfeited article or component of an article bearing or consisting of a counterfeit mark be destroyed. [...]


## 18 U.S.C § §981. Civil Forfeiture

(a)(1) The following property is subject to forfeiture to the United States:

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

## 18 U.S.C. § 1956. Specified Unlawful Activity

(c) As used in this section--

(7) the term "specified unlawful activity" means--

(D) an offense under [...] section 2319 (relating to copyright infringement), section 2320 (relating to trafficking in counterfeit goods and services)[...]

## 28 U.S.C § 2461(c).   Mode of Recovery

(c) If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code. The procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act.


## 18 U.S.C. § 3282. Statute of Limitations

(a) In general.--Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

2009 MAY -6 P 2: 36

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>V.<br><br>RODOLFO RODRIGUEZ CABRERA,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:09-CR-00173-PMP-PAL<br><br><br><br>AFFIDAVIT OF NICHOLAS E. BUGNI<br>IN SUPPORT OF EXTRADITION<br>REQUEST |

NICHOLAS E. BUGNI, a Special Agent with the Federal Bureau of Investigation

("FBI"), being duly sworn, deposes and states:

1.  I am a citizen of the United States, working in Las Vegas, Nevada.  I have been a

Special Agent with the FBI for two years.  I am currently assigned to the Computer Crimes

Squad in the Las Vegas Field Office.  Among my current duties are the investigation of

computer-related crimes, including copyright and trademark infringement.  Relating to this

investigation, my duties include the investigation of violations of 17 U.S.C. § 506 and 18 U.S.C.

§ 2319 (Criminal Copyright Infringement), 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 2318

(Trafficking in Counterfeit Labels), and 18 U.S.C. § 2320 (Trafficking in Counterfeit Goods).

2.  I submit this affidavit in support of the request by the United States of America

("United States") for the extradition of RODOLFO RODRIGUEZ CABRERA ("CABRERA")

from the Republic of Latvia ("Latvia") for the purpose of prosecuting him on the charges

contained in the Indictment, <u>United States v. Rodolfo Rodriguez Cabrera</u>, 2:09-cr-173-PMP-PAL (the "Indictment") issued on April 22, 2009.

    3.  Since December of 2007, the U.S. Department of Justice and the Federal Bureau of Investigation have been conducting an investigation into CABRERA of FE.Electronic located at Kveles 15-17 STR, Riga, Latvia and Henry Mantilla ("Mantilla") of Southeast Gaming, Inc., located in Cape Coral, Florida, concerning their illegal reproduction and distribution of International Game Technology ("IGT") and Williams Gaming Corporation ("WMS") copyright protected computer programs and illegal trafficking of goods bearing counterfeit IGT trademarks.

    4. IGT and WMS are Nevada companies that manufacture gaming machines. Among the parts that IGT produces for its gaming machines include 038 boards, 039 boards, and 044 boards which function as the central processing unit for IGT's gaming machines. These items all bear the trademarked logo of IGT. IGT also creates game theme software for its gaming machines. Usually, the game theme software is loaded onto a memory device such as a flash card and then mounted on a 038 board, 039 board, or 044 board. IGT also affixes a label to the memory devices which bear IGT's registered trademark. IGT owns the copyrights for all of the computer software they use in their gaming machines and all IGT logos have been registered as trademarks by IGT on the principal register of the U.S. Patent and Trademark Office.

    5. WMS also designs and manufactures its own computer programs to run its gaming machines. WMS also owns the copyrights to all their computer programs and they have registered their logos trademarks on the principal register of the U.S. Patent and Trademark Office.

    6. Neither CABRERA, FE.Electronic, Mantilla nor Southeast Gaming have ever been

authorized or licensed by IGT or WMS to reproduce or distribute their computer software, reproduce labels bearing IGT's registered trademarks or manufacture gaming machines bearing IGT's trademarks.

7.    In 2008 and 2009, Chuck Frost was interviewed by the FBI. Chuck Frost is the owner of Aqua Gaming in Florida and the former employer of Mantilla. Mantilla worked for Frost at Aqua Gaming from approximately January 2006 to July 2007. In 2006, Mantilla recommended to Frost that he meet CABRERA and take a tour of his business FE.Electronic in Riga, Latvia. In November of 2006, one of his Frost's employees named Pablo Perez went to FE.Electronic in Riga Latvia to learn how to work on IGT 039 circuit boards. Frost met with CABRERA and Mantilla at FE.Electronic in Riga, Latvia on or about January 27, 2007. During the visit, CABRERA showed Frost the second floor of his business which is located at 15-17 Kveles Str in Riga, where CABRERA was building counterfeit IGT machines. CABRERA showed Frost approximately 40 counterfeit IGT gaming machines that CABRERA and his employees had built. CABRERA also showed Frost a room where approximately 4 employees were soldering jumper cables onto the back of IGT 044 boards. CABRERA told Frost that they could obtain any IGT program he wanted and then copy them onto the IGT 044 boards. CABRERA also showed Frost a sample of counterfeit IGT labels bearing the IGT registered trademark that CABRERA said he put on the counterfeit IGT computer programs. CABRERA also showed Frost counterfeit IGT serial plates that CABRERA stated they placed on the completed counterfeit IGT machines. CABRERA also showed Frost a device inside a suitcase that CABRERA said he used to copy original IGT computer programs from gaming machines located in casinos. Frost took photographs of several of the items described above. Items similar

3

to the items described above were found during a search by Latvian law enforcement of CABRERA's business, FE.Electronic on April 15, 2009.

8. A review of CABRERA's email account of rrgucz@parks.lv and Mantilla's email accounts of southeastgaminginc@earthlink.net and southeastgaminginc@embarqmail.net revealed numerous emails between CABRERA and Mantilla in 2007 and 2008 containing spreadsheets, customer lists, invoices and financial information concerning their illegal business of counterfeiting IGT gaming machines and IGT computer programs.

9. On October 9, 2007, Mantilla sent an email to his former employer, Chuck Frost, with an attachment listing 101 WMS gaming machines. The body of the email contained the following: "Chuck, these are sitting in Riga in customs. Rodolfo's customer has not come through with the funds if he does not pay by tomorrow he's going to lose the machines and the deposit there is 100 of them and Rodolfo and his team have go through them with a fine tooth comb they all have trays and harnesses to pop in a hopper, comparitor or printer ready $4500 each ship sails on Sat."

10. On October 17, 2007, Vanessa at Southeast Gaming sent an email to a shipping company which stated: "Norman, Here is the info I have to setup shipping from Fe Electronics in Riga, Latvia to East Coast Slots in Port Everglades, FL. It is a 40 ft container and East Coast Slots is paying the shipping. I need it to be shipped by sea ASAP (2-3 weeks tops)...[...]Contact info. Nevin @ East Coast Slots ph#561-703-2738   Rodolfo, Fe Electronics 011-371-751471..."

11. On October 19, 2007, CABRERA sent an email to Mantilla containing six photographs showing the step-by-step process to modify an IGT 044 circuit board so that counterfeit copies of IGT computer programs could run properly.

4

12. On October 24, 2007, CABRERA sent an email to Mantilla which contained a list of 66 WMS game machines. Neither CABRERA nor Mantilla have ever been authorized by WMS to reproduce or distribute WMS computer programs.

13. On October 31, 2007, CABRERA forwarded two attached emails to Mantilla. The first email shows that on October 30, 2007, CABRERA sent an email to East Coast Slots, stating "Please find attached invoice for freight charge." The attachment was an invoice dated October 26, 2007 with FE.Electronic's address and telephone numbers listed on the letterhead, billing East Coast Slots $29,864.00 for "Packing and handling" and "Shipping (Riga,LV - Huston [sic], USA)." The invoice bears a signature above the words "Rodolfo Rodriguez Cabrera" and lists under "Payment details" CABRERA's Hansabanka account number. This email was in response to an email from East Coast Slots to CABRERA dated July 26, 2007, Subject: "Purchase Order from East Coast Slots LLC" which stated "Dear Vendor: Rodolfo Please review the attached Purchase Order & confirm receipt, availability, price & delivery [...]"

14. On October 31, 2007, CABRERA sent an email to Mantilla with two attachments. The first attachment was an invoice dated October 23, 2007 on FE.Electronic letterhead, billing a company in the United States $5,654.95 for "shipping of 150 pcs Williams Upright 550 Riga (Latvia) - New Jersey (USA)." A signature appears over the words "Rodolfo Rodriguez Cabrera" at the bottom of the invoice and CABRERA's HansaBanka account information is listed under the words "Payment Information." The second attachment was also an invoice on FE.Electronic letterhead. This invoice was dated October 31, 2007 and listed a charge of $22,638.00 for "Packing and handling" and "Shipping." This invoice also had a signature over the words "Rodolfo Rodriguez Cabrera" and listed CABRERA's HansaBanka account

5

information.

    15. On November 6, 2007, Mantilla sent an email to CABRERA containing a prior email sent by CABRERA to Mantilla's former employer, which stated "Chuck, I sent Henry all the necessary information so that we can help you, I can offer a new hand tool which is capable of making up to 100 games a day 039, I am also very [g]ood library 044, respondme [sic] if you have any interest in working with me. Henry was try to talk to you for send me 20 games do you want to work with us or not? Greetings Rodolfo."

    16. On November 30, 2007, CABRERA sent an email with an attachment to Nevin Moorman of East Coast Slots at nevincasino@aol.com. The attachment was an eight page user guide for a device specifically designed to illegally copy IGT computer programs called the "IGT Quad Clone." The user guide provided a step-by-step process of how to install the copying program on a computer and how to properly copy the computer programs.

    17. On December 5, 2007, a Confidential Source ("CS") was introduced to Henry Mantilla of Southeast Gaming, Inc. (The Confidential Source cannot be identified at this time because the investigation is on-going and the CS is continuing to assist law enforcement with the gathering of evidence.) CS and Mantilla met for approximately two hours to discuss various aspects of the business conducted by Mantilla. This included buying and selling gaming parts such as button panels, cabinets, and IGT software. CS provided Mantilla a business card containing CS's contact information, including a business email address.

    18. On December 12, 2007, Mantilla faxed CS a list of 41 IGT game themes that Mantilla claimed he had for sale. The list contained the names of game themes, the Game King numbers, and whether the programs were licensed. "Game King" is a version of gaming

machines produced by IGT.   Each game theme is designated with a Game King number which begins with the letters "GK" and is followed by five or six digits, such as "GK123456."  IGT uses the "GK" number to track and identify specific game themes.

19.   On December 13, 2007, CS and Mantilla finalized the details of the transaction during a telephone conversation.  Specifically, CS agreed to provide Mantilla six IGT 044 boards valued at $680.00 each in exchange for 15 IGT game theme programs loaded onto flash cards valued at $800.00 each.  The final transaction required CS to send Mantilla six IGT 044 boards and $7,920.00 while Mantilla would send CS 15 flash cards loaded with IGT game theme programs.

20.   On December 14, 2007, Mantilla instructed CS to send the six IGT 044 boards to CABRERA at FE.Electronic, Kveles 15-17 STR, Riga, Latvia, and to write "circuit boards for repair" with a valuation of $3.00 for each board on the customs declaration paperwork.  The owner of FE.Electronic has been determined to be CABRERA.

21.   On December 15, 2007,  six IGT 044 boards were sent via overnight courier to CABRERA's company, FE.Electronic in Riga, Latvia.  According to the courier services records, the package containing the 044 boards was delivered on December 18, 2007.

22.   On December 26, 2007, CS received 15 flash cards from Mantilla.  The flash cards had been sent FedEx from Southeast Gaming, Inc., 944 Country Club Boulevard, Cape Coral, Florida.  CS, who is familiar with the appearance of IGT flash cards,  examined the flash cards and noticed what appeared to be several differences between them and legitimate IGT flash cards.  These differences included the general physical appearance, as well as what appeared to the CS as counterfeit IGT trademarks and logos placed on the 15 flash cards.

23.     On December 27, 2007, CS wired $7,920.00 to Mantilla's Bank of America

Account # 229006228751.  Later that day, Mantilla sent CS an email using

"southeastgaminginc@embarqmail.com," that provided instructions on how to modify the IGT

044 boards so that the recently purchased gaming programs would work.  Specifically, the email

contained instructions on how to solder jumper wires onto an existing 044 board and thereby

allow the circumvention of the security features embedded in the circuit boards and programs by

IGT. Otherwise, the programs contained on the flash cards would work not properly.  The

instructions also included several pictures depicting the process to complete the modifications.

This email contained the same photographs that were sent by CABRERA to Mantilla on October

19, 2007 referenced above.

24.  The FBI has determined that the memory devices contained unauthorized copies of

IGT computer programs and counterfeit labels bearing IGT's registered trademark.  A later

examination of the 15 flash cards by an IGT firmware engineer determined that the flash cards

did not appear to be legitimate IGT flash cards.  Specifically, the IGT engineer identified 12

unauthorized modifications to the flash cards which circumvented the security features contained

in the IGT software and, thereby, allowed the illicit copies of the software to run properly.  All 15

IGT flash cards were tested using a modified IGT 044 board.  The IGT 044 board was modified

in accordance with instructions provided by Mantilla to CS, which allowed the circumvention of

IGT security features embedded in the circuit board and IGT software.  Therefore, the IGT

firmware engineer was able to confirm 14 of the 15 IGT flash cards  were fully operational and

contained IGT gaming software.  Labels bearing the IGT registered trademark were affixed to all

of the flash cards.  Finally, representatives of IGT confirmed that Mantilla  has never been

authorized to copy or distribute IGT gaming programs or to manufacture or distribute gaming equipment bearing the IGT trademarked logo.

25.     On May 9, 2008, CS sent an email to Mantilla at service@southeastgaminginc.com and ordered 10 IGT conversion kits.  A conversion kit is a group of components used to change a game theme on a gaming machine.   Mantilla explained that the kits would include an 044 board loaded with the selected game theme, an "E2 microchip" already programmed with a license code, a motherboard and a button harness assembly.

26.  On July 14, 2008, CS received a FedEx package from CABRERA's company, FE.Electronic, Kveles 15-17, Riga, Latvia containing the 10 conversion kits ordered from Mantilla.  The package contained ten (10) IGT 044 boards with flash cards loaded with IGT game theme programs, ten (10) button harnesses, and nine (9)  motherboards.   Like the previous shipment, the FBI determined that the flash cards contained unauthorized copies of IGT computer programs. These items were later examined by an IGT firmware engineer, who determined that the flash cards had the same physical modifications as the flash cards received on December 26, 2007. Four of the flash cards which appeared to be similar to previously obtained flash cards were loaded onto four 044 boards which were modified with jumper wires appearing to be consistent with the modification instructions sent by CABRERA to Mantilla in October of 2007 and by Mantilla to CS  in December of 2007. When these four sets of components were tested, only three ran properly without errors. Thus, the IGT engineer was able to confirm that those three flash cards contained IGT gaming software. It should be noted that the non-operative 044 board had a dislodged jumper wire.  The other six conversion kits were tested and five of the devices ran properly and therefore confirmed to contain IGT gaming software.  Labels bearing

9

the IGT registered trademark were affixed to 4 of the 10 flash cards. The other six flash cards bore handwritten labels identifying the game theme.  Finally, representatives of IGT confirmed that CABRERA, FE.Electronic, Mantilla or Southeast Gaming Inc. have never been authorized to copy or distribute IGT gaming programs or to manufacture or distribute gaming equipment bearing the IGT trademarked logo.  IGT also confirmed that they never distribute their gaming software with handwritten labels.

27.  On October 1, 2008, Mantilla informed CS that he had approximately 70 IGT gaming machines that he would like to convert to new game themes and try to sell.  Mantilla proposed a partnership with CS wherein they would split any profit equally.  Mantilla claimed that they would be able to buy IGT 044 boards and then "just program them."

28.  On October 27, 2008,  Mantilla informed CS of the initial costs for the machines, freight, Video screen's, printers, and bill validators.  Mantilla added "the programming, I'm not gonna charge."  Mantilla also stated that he has all the "latest and greatest" game themes and that "you're  not gonna find something that I don't have."  Mantilla again expressed how much money they could make stating that "my partner, you, and I can make a killing" and that "all three of us will come out smelling like roses."  Later in the conversation Mantilla stated that his partner located in Riga, Latvia would now be CS's partner.  Mantilla later identified his partner as CABRERA.

29.  On or about November 1, 2008, CS and Mantilla discussed a picture of an electrical device that Mantilla had recently e-mailed to CS.  Mantilla explained that the device is called a "programmer" and can be used to make unauthorized copies of IGT software.  Mantilla further explained that the programmer is Windows based and can be connected to a computer through a

10

USB port.  Once connected, the programmer can be used to copy IGT gaming software onto a

Single In-Line Memory Module (SIMM) card. Mantilla further claimed that 6 programmers were

created as prototypes approximately 1 year ago and that they worked so well that he planned on

producing and distributing five additional programmers.  Mantilla stated that he does not want to

flood the market so he will only release them to his "closest and dearest friends."

30.  During a  phone conversation on November 7, 2008, Mantilla informed CS that the

gaming machines were in Riga, Latvia at CABRERA's company FE.Electronic and that it would

take a week to convert the machines to new game themes and then ship them to the United

States.  Mantilla asked CS if he/she had found a buyer for the gaming machines and if so, if

Mantilla could begin preparations to have the gaming machines shipped to the United States.

31.  On  November 19, 2008, CS received a draft partnership agreement via facsimile

from (239)573-4206, which specified the terms and conditions for the partnership of converting

60 IGT gaming machines.

32.  During a phone conversation on November 24, 2008, Mantilla informed CS of the

benefits of having his partner, CABRERA,  in Riga do the work in Latvia.  Specifically, Mantilla

stated it would be easier because the machines were already in Riga at CABRERA's company,

FE.Electronic, the cost of labor is lower in Latvia, and his partner in Riga has a programmer.  CS

later asked how they would procure the IGT labels that would be placed on the flash cards

containing the IGT software.  Mantilla stated that "we make our own" and promised to send CS

the program along with the reference sheet containing the numbers of the game themes.  Mantilla

also informed CS that the labels "look exactly the same."

33.  On December 8, 2008, CS received an e-mail from

service@southeastgaminginc.com, containing a picture of a programmer.  Later that day,

Mantilla called CS to confirm receipt of the picture and stated that he could provide one to CS

for him/her to try.   Mantilla also stated that he had 4 programmers that he was looking to sell for

$15,000.00 each.  A similar programmer was later found at CABRERA'S business,

FE.Electronic during a search on April 15, 2009.

     34.   Throughout the month of December, Mantilla faxed CS four versions of the

partnership agreement each containing minor revisions.  However, the number of machines to be

converted was lowered from 60 to 30.   On December 30, 2008, Mantilla faxed CS the final

agreement for the conversion of 30 IGT gaming machines  from (239)573-4206.  The revised

contract stated that they agreed to convert 30 machines to whatever game themes requested by

CS.  The final agreement was for Southeast Gaming, Inc. to provide the 30 older machines and

CS to provide IGT 044 boards, flash cards, and the buyer.  The machines would be refurbished

with new video screens, IGT 044 boards, IGT flash cards (to be programmed by Mantilla), game

theme glass and sold for $4,000.00 each.  The agreement stated that the total sale would be

$120,000 of which 25% ($30,000) would be have to be paid by the buyer up front.  The deposit

was to be used to pay for expenses such as Video screen's, shipping, and labor.  CS chose game

themes from the list of available IGT game themes he received from Mantilla.

     35.  CS and Mantilla both agreed to the terms and signed the contract.  Mantilla also

included an invoice from Southeast Gaming, Inc., for the shipping expenses of the 30 IGT

machines from CABRERA's company, FE.Electronic in Riga, Latvia to Cape Coral, Florida.

     36.  On January 6, 2009 CS deposited $2,650.00 into Mantilla's Bank of America

Account, # 229006228751, as annotated on the invoice received from Southeast Gaming, Inc on

December 30, 2008. The deposit was made to cover the cost of shipping the 30 IGT machines from CABRERA's company, FE.Electronic in Riga, Latvia to Cape Coral, Florida.

37. On January 7, 2009, CS received an invoice from CABRERA's company, FE.Electronic, for the cost of 30 Video screen kits in the amount of $12,450.00. The invoice was on FE.Electronic letterhead, but was received from Southeast Gaming, Inc.'s fax number of (293)573-4206.

38. On January 9, 2009, Mantilla told CS that the 30 IGT gaming machines will be "100% complete including programs, bill validators set up, everything" when shipped from CABRERA's company, FE.Electronic in Riga, Latvia. Mantilla also confirmed that the gaming machines would be ready to present to the buyer by the second week of February. Later that day, CS deposited $12,450.00 into Bank of America account number, 229006228751, for the cost of Video screen kits used in the conversion of 30 gaming machines.

39. During a phone conversation with CS on January 12, 2009, Mantilla explained that they would be able to physically modify any 044 board that CS's buyer would purchase so that the game would run properly and thereby circumvent the security measures placed on the IGT gaming software. Mantilla also stated that he recently decided to do part of the conversion of the 30 IGT gaming machines at his business in Florida. CS asked if Mantilla would be doing the programming. Mantilla responded that his partner in Riga (later identified as CABRERA) would do the programming, but the rest of the work would be done in Florida. Mantilla explained that by splitting up the work, they would avoid having to pay a 30% import duty on the completed games.

40. On January 23, 2009, Mantilla claimed to CS that his partner in Riga, CABRERA

13

has the capability to make signs just like IGT for their games and that they even make their own

controllers.  On January 27, 2009, CS had a telephone conversation with Mantilla regarding the

game theme glass and status of the gaming machines.  Mantilla stated that "Rodolfo" was

working on their games right now and was finishing the metal work and mounting the

motherboards.  Mantilla later confirmed that "Rodolfo" was CABRERA.

41.  On February 10, 2009, Mantilla informed CS that he could make his own game

boards (flash cards with game theme software).  CS asked Mantilla if he had the capability of

making his own game boards in Florida.  Mantilla clarified saying, no, the boards had to be made

"over there."  During the conversation, CS heard Mantilla asking another individual to confirm

which game themes CS had ordered and to look in the "project file" for specific documentation

pertaining to the partnership and conversion of the IGT machines.   Later that day, Mantilla

informed CS that he had sent CS a programmer and asked if CS would help him fill orders for

copies of IGT software that he had pending for other customers. CS agreed to assist Mantilla by

burning copies of IGT software.

42.  On February 26, 2009, CS received an e-mail from service@southeastgaminginc.com

containing a FedEx tracking number for the programmer.   On March 3, 2009, CS received a

FedEx package bearing a return address of CABRERA's company,  FE.Electronic, Riga, Latvia.

The package contained a programmer and a CD with programming software.  The programmer

was offered by Mantilla and was provided in order for CS to fill IGT gaming software orders on

his behalf.  A similar programmer was found at CABRERA'S company, FE.Electronic during a

search on April 15, 2009.

43.  On March 3, 2009, CS had a telephone conversation with Mantilla regarding the

14

programmer. CS confirmed that he/she received the programmer and Mantilla again informed

CS of the programs he needed to burn and that he would get him whatever CS needed to get them

done. CS asked where he would obtain the IGT labels to place on the  game theme software.

Mantilla advised CS to purchase a P-touch printer and that he would provide the templates to

make the IGT labels. Mantilla also informed CS how to bill for the copied programs. Mantilla

also explained that the programmer was developed "in house" and that they are perfectionists in

building the gaming machines.

44.  On March 5, 2009, an IGT firmware engineer tested the programmer, using a

program provided by CABRERA's company, FE.Electronic named "IGT Quad Clone." The

IGT engineer was able to burn several copies of IGT game theme software onto memory devices.

The IGT Quad Clone program also allowed the IGT engineer to copy and download existing IGT

software onto a personal computer and reprogram those files onto used or unused SIMM cards.

45.  On March 16, 2009, CS received two e-mails from

service@southeastgaminginc.com.  The first e-mail contained an order for 14 IGT  game theme

programs designed for the IGT 039 board that CS was to copy.   The second e-mail contained

shipping information for the container containing the 30 IGT gaming machines from Riga, Latvia

to Miami, Florida.  It was later determined that the gaming machines were shipped by

CABRERA.

46. On March 17, 2009, CS received a FedEx package bearing a return address of

Southeast Gaming, Inc., 735 NE 19th Place, Unit 7, Cape Coral, Florida.  The package contained

a DVD-R containing the IGT game theme programs that were to be copied by CS.  Mantilla had

provided CS, a programmer, cloning software, and game theme software in order to reproduce

15

IGT gaming software.

47. On March 27, 2009, CS received an e-mail from service@southeastgaminginc.com advising CS that they did not have labels yet but would provide them as soon as they did. The e-mail was responding to an earlier inquiry by CS concerning what labels were to be placed on the copied 14 IGT game theme programs.

48. On March 29, 2009, the machines being shipped from Latvia arrived in the port of Miami, Florida. On March 30, 2009, Customs and Border Protection agents with the U.S. Department of Homeland Security inspected the shipment and found 41 IGT gaming cabinets of which 37 were fully wrapped within the shipping container. One machine was unwrapped for further inspection and was identified as having no screen or program boards.

49. On April 3, 2009, Mantilla informed CS that the machines had arrived at his business location but still needed to have video screen, game theme programs, 044 boards, and glass put in them. He added that he was going to order the video screen's and advised that the programs would be there by next week. Mantilla stated would order the game theme glass and advise CS once it arrived.

50. On April 15, 2009, Henry Mantilla of Southeast Gaming, Inc. was interviewed after a search warrant was executed at his business location, 735 NE 19th Place, Suites 6 & 7, Cape Coral, Florida. During the interview, Mantilla confessed that he and CABRERA of FE.Electronic located in Riga, Latvia were partners engaged in the business of producing and selling counterfeit gaming machines. Further he stated that he and CABRERA not only shared profits but also worked exclusively with one another. Mantilla acts as the United States representative by soliciting business and CABRERA was responsible for the creation of the

16

counterfeit gaming machines and making the illegal copies of IGT computer programs. Mantilla added that CABRERA had the capability of copying, reproducing, and operating illegal counterfeit versions of IGT game theme computer software. He explained that in order to run the counterfeit software he and CABRERA had to circumvent the security measures placed on the legitimate IGT processor board. They did this by soldering jumper wires in specific locations on the processor board to bypass the authentication process. Mantilla had soldered jumper wires on IGT processor boards according to instructions provided by CABRERA. Mantilla received the processor boards from CABRERA on April 3, 2009.

51. Also on April 15, 2009, a search warrant was served on CABRERA's company, FE.Electronic, Kveles 15-17 STR, Riga, Latvia. Over 100 counterfeit IGT machines were found containing unauthorized copies of IGT computer programs and modified IGT processor boards. Additionally, further search of the premises revealed two secret rooms. The first room contained business records, including financial statements, and the second room was identified as a programming room, containing several computers and equipment used to make unauthorized copies of IGT computer programs. Specifically, the following items where found in on the second floor of FE.Electronic: a device hidden in a briefcase designed specifically to copy IGT computer programs, counterfeit IGT labels meant to be placed on counterfeit IGT computer programs, other devices designed to copy IGT computer programs, memory devices to hold the counterfeit computer programs, a device designed to manufacture counterfeit IGT circuit boards, counterfeit IGT game theme glass and several IGT 044boards.

52. A review of Mantilla's bank records also show wire transfers of over $400,000 from Mantilla to CABRERA's HansaBanka bank account between 2007-2008 and wire transfers of at

least $187,000 from CABRERA's HansaBanka account to Mantilla during this same time period.

### Identification

53. Rodolfo Rodriguez CABRERA is a Cuban citizen and a permanent resident of Latvia. CABRERA's date of birth is 16 March 1966 and was born in Camaguey, Cuba. CABRERA has a Latvian Personal ID number, 160366-14474, and a current Cuban passport number C436065. His business address is Kveles 15-17 STR, Riga, Latvia and home address Vaidavas Street 15/1-50, Riga, Latvia.

54. A photograph of Rodolfo Rodriguez CABRERA is attached as Exhibit E.

NICHOLAS E. BUONI
Special Agent
Federal Bureau of Investigation

Signed and sworn to before me
this ___ day of May 2009

UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEVADA

18

Exhibit E
Photograph of RODOLFO RODRIGUEZ CABRERA

